IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
| v. | )    Case No. 13-10030 – EFM |
| | ) |
| JUAN D. MORALES, | ) |
| | ) |
|     *Defendant*. | ) |

## MEMORANDUM AND ORDER

Defendant Juan Morales was indicted by the grand jury on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. 922(g)(1), and one count of possession of a stolen firearm in violation of 18 U.S.C. 922(j)[1]. The matter was called for jury trial on May 15, 2013. The jury returned a verdict of guilty. Defendant has now filed a motion for Judgment of Acquittal, or in the alternative for a new trial, pursuant to Rule 29 of the Federal Rules of Criminal Procedure (Doc. 40).

Briefly, the evidence at trial showed that following a late evening or night-time traffic stop of an automobile in which Defendant was a passenger, Defendant bolted from the car and ran through the neighborhood. He was pursued and apprehended by a law enforcement officer a block or so away. Thereafter, officers discovered a firearm lying in a yard along the flight path. The firearm bore no signs of having been there for a long period of time (no condensation or debris was on it). The pursuing officer testified that he did not see the Defendant either possess

---

[1] At the commencement of trial, the Government announced that it would not be proceeding on Count 2, and that count has been dismissed.

or discard the firearm, but that the Defendant was briefly out of the officer's line of vision when he rounded the corner of the house in whose side yard the firearm was discovered. And in response to defense counsel's line of questioning, law enforcement officers testified that finding a loaded firearm lying in a yard was a highly unusual if not utterly unprecedented event in that community.

Defendant asserts that the evidence was insufficient to support a verdict of guilty. The Government presented no direct evidence such as eyewitness testimony or forensic evidence, and Defendant argues that the circumstantial evidence was insufficient for conviction. The issue of direct versus circumstantial evidence played a starring role in this trial, from opening statements to closing argument. The jury could have had no doubt that the government's case rested on circumstantial evidence. Defendant's motion essentially asks the Court to weigh the circumstantial evidence itself. Instead, the law requires the Court to determine whether any rational trier of fact could have convicted the Defendant on the evidence presented, and to grant acquittal only if it determines that they could not.[2] Viewing the evidence in the light most favorable to the Government, as the Court must at this stage, it is not even a close call whether a rational trier of fact could have convicted on the mostly circumstantial evidence presented. Defendant's Motion for Judgment of Acquittal is denied.

Defendant also seeks a new trial, claiming in addition to the above arguments that his right to a fair trial under the Fifth Amendment was violated when the jury panel, during a voir dire recess, saw him removed from the courtroom in handcuffs and taken on an elevator from which jury panel members were barred. Defendant claims that this "created the erroneous impression that he was potentially dangerous." Defendant argues that this demonstration significantly compromised his right to be presumed innocent. Defendant relies on *Deck v.*

---

[2] *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001).

*Missouri,*[3] which held that routine use of physical restraints visible to the jury during the sentencing phase of a capital case is a violation of the Due Process clause where it was not shown to be specifically justified by the circumstances. The Supreme Court there noted that "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need."[4] The Court noted that this principle is founded upon the undermining of the presumption of innocence and the related fairness of process that visible shackles creates; the interference shackles can create in the accused's ability to communicate with his counsel and participate in his own defense; and the respectful treatment of defendants which is required of a dignified judicial process.[5] Thus, the Court held that:

> [w]here a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.[6]

In response, the Government simply relies upon twenty-year-old precedent that an isolated view by jurors of a defendant in handcuffs does not justify a new trial in the absence of a showing of actual prejudice. These arguments are nonresponsive to Defendant's arguments in light of the more recent holdings of *Deck*.

First, a few distinguishing observations are in order. Unlike the defendant in *Deck*, this defendant was not in full shackling (belly chain, leg irons, etc.). Indeed, while sitting in the courtroom he was dressed in street clothes and entirely free of restraints. Only at recess was he

---

[3] 544 U.S. 622 (2005).
[4] *Id.* at 626.
[5] *Id.* at 630-31.
[6] *Id.* at 635.

handcuffed (nothing more) while being moved through the courthouse. Accordingly, the second and third concerns expressed by the *Deck* Court are not applicable here.

Regarding the first, which concerns the presumption of innocence, the Court first acknowledges that the distinction between mere handcuffs, in this case, and the much more extensive restraints used in *Deck*, may not be of much legal significance. However, the distinction between being shackled in court, and being handcuffed while in transit to and from the courtroom, is significant.[7] Even with full consideration of the admonitions of *Deck*, the routine security practice of transporting in-custody defendants to and from the courtroom in restraints, and the momentary or inadvertent observation of the same by members of the jury panel, are not significant. Even unsophisticated jurors know that some criminal defendants are in law enforcement custody for reasons which may or may not relate to their dangerousness, and that transporting them from one place to another in handcuffs is unremarkable, ordinary, and even desirable.[8] And even following *Deck*, courts continue to recognize that "a State's legitimate interest in maintaining order and security may outweigh any prejudice to the defendant resulting from his appearance before the jury in restraints."[9]

Upon the Defendant's objection, following the recess the Court admonished the jury that any security precautions taken while moving the Defendant during the recess should in no way be considered by the jury as eroding the full presumption of innocence to which he was entitled. Finally, it should be noted that the complained-of actions by the U.S. Marshals in this case were

---

[7] *Mendoza v. Berghuis*, 544 F.3d 650, 655 (6th Cir. 2008) ("Restraining a defendant in the courtroom, and restraining him during transport there, are two very different things").

[8] *Santos v. Maddock*, 2006 WL 1686091 (E.D. Cal. 2006) (discussing and distinguishing *Dent* on the facts and citing *United States v. Ghent,* 279 F.3d 1121, 1132 (9th Cir. 2002); *United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir. 1995); *Dupont v. Hall*, 555 F.2d 15, 17 (1st Cir. 1977); and *United States v. Leach*, 429 F.2d 956, 962 (8th Cir. 1970)).

[9] *Trujillo v. Hartley*, 2010 WL 2692173 (D. Colo. 2010) (citations omitted).

taken only after acquainting the judge with their security concerns, based on the Defendant's criminal history and background (discussed in more detail below).[10]

In a case which cited *Deck*, the Tenth Circuit noted:

> While the use of shackles or other restraints is clearly not favored, the constitutional requirement against routine restraints is not absolute. A judge, in the exercise of discretion and taking into account the special circumstances of each proceeding, including security concerns, may call for shackling. But given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case.[11]

This Defendant presented a lengthy prior record of nearly two dozen offenses, going back to his early juvenile years, including battery, assault, probation violations, obstruction of process, aggravated assault, weapons charges, escape from custody, discharge of firearm at an occupied vehicle, and criminal threat. He was listed by NCIC as a gang member. The U.S. Marshals informed the Court that, given Defendant's record, his gang affiliation, and issues where he was being held pretrial (the details of which the Court was not informed), they thought that while moving him to and from the courtroom they should have him in restraints. The Court approved.

The *Deck* court noted:

> The constitutional requirement, however, is not absolute. It permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling. In doing so, it accommodates the important need to protect the courtroom and its occupants. But any such determination must be case specific; that is to say, it should reflect particular concerns, say special security needs or escape risks, related to the defendant on trial.[12]

The Court's decision in this case was in accord. During the jury selection and trial, Defendant was unrestrained and in street clothes. However, while moving Defendant to and from the courtroom during recess for comfort breaks, given that the old historic courthouse in

---

[10] Defense counsel counters that his personal experience has failed to provide support for the handcuffing of Defendant, but the personal experience of defense counsel is certainly not the test for security measures.
[11] *Ochoa v. Workman*, 669 F.3d 1130 (10th Cir. 2012), (citations omitted).
[12] 544 U.S. at 633.

Wichita has no separate hallways, elevators, or facilities to keep detained criminal defendants separate from the general public, and given the Defendant's characteristics, the Marshals recommended that he be handcuffed. While the Marshals did not specifically discuss commandeering the elevator for the Defendants exclusive transport, such action logically follows. When Defendant's counsel complained of his client's restraint at the recess, the Court informed counsel of the Marshals concerns. The Court denied the motion for a new panel by noting that given the Marshals security concerns, which the Court would not second guess, similar security precautions would be in order with a new panel.

The same analysis applies now. The precautions taken are in accord with the above quoted language of *Deck*. The motions for new trial on these grounds are accordingly denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment of Acquittal, or in the alternative a new trial (Doc. 40) is DENIED.

**IT IS SO ORDERED**.

Dated this 28th day of May, 2013.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE